Kevin Murphy
WUERSCH & GERING LLP
100 Wall Street, 10th Floor
New York, New York 10005
Tel. 212-509-5050
Fax: 212-509-9559
kevin.murphy@wg-law.com
*Attorneys for Petitioner*
*Tracey Amon*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
IN RE *EX PARTE* APPLICATION OF TRACEY AMON
FOR AN ORDER TO OBTAIN DISCOVERY
FOR USE IN FOREIGN PROCEEDINGS                    Case No.: 2022-CV-

                                    Applicant.
-----------------------------------------------------------------x

## DECLARATION OF FANETTE SARDET

I, Fanette Sardet, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

1.      I am an attorney with Rusconi & Associés, a Swiss law firm with a commercial and inheritance practice, including litigation. I graduated with a bachelor of laws degree and a master of laws degree from the University of Friboug in Switzerland and was called to the Swiss Bar in 2017. I have been practicing as an attorney in Switzerland since 2017.

2.      I submit this declaration in support of the Application of Tracey Amon, pursuant to 28 U.S.C. § 1782 for an order to obtain discovery for use in one or more foreign proceedings.

3.      The statements herein are based on my personal knowledge of the facts, my familiarity with the proceedings in this case, and based upon documents that I have reviewed in connection with this matter. My law firm is legal counsel to Tracey Amon, the petitioner herein.

4.      Applicant is the widow of Maurice Alain Amon ("Decedent"), who until his death in 2019, was the sole beneficial owner of a number of companies with estimated personal

1

assets exceeding 600 million dollars.  Tracey and Maurice Amon were married on December 22, 2008 in Hong Kong without a marriage contract.

5.      On September 29, 2015, Decedent filed for divorce in Monaco and notified Ms. Amon only several days later.

6.      On July 24, 2018, the Decedent executed a will, claiming to be domiciled in the Principality of Monaco, a claim Ms. Amon disputes in multiple proceedings in Switzerland, described in detail below.  The will specified that Swiss law would apply to his estate. In that will, Decedent named his son Albert Amon, from a previous marriage, sole heir, and Silvio Venturi, de facto executor of his estate.  The defective will was prepared and executed in order to disinherit Ms. Amon, although she was still married to Decedent.

7.      In a codicil of the will, executed in Singapore on 17 March 2019, Decedent amended his will and bequeathed Virginie Mouzat 20,000,000 Swiss Francs (CHF.)  It is believed that Ms. Mouzat – a French citizen and resident - was Decedent's girlfriend for at least a number of months prior to Decedent's death.

8.      In the same codicil, Decedent also bequeathed Christophe Guiraud, a French citizen and the residence manager of the Decedent's main property (Chalet MATA), located in Bern, Switzerland, the sum of 2,000,000 CHF.

9.      Also, Decedent bequeathed Silvio Venturi, a Swiss citizen and Monegasque resident – Maurice's long-time confidant, attorney, Business Manager, naming him executor and a legatee the sum of 10,000,000 CHF.

10.      Maurice Amon died suddenly on July 26, 2019 in Ramatuelle, France before the divorce case was concluded.  According to Swiss law, Ms. Amon had the right to file an action of reduction to invalidate the unjustified disinheritance clause in the will, and hence receive her compulsory portion as an heir.  In any case, the disinheritance has no effect on the

2

dissolution of the matrimonial assets that takes place before the attribution of any share or amount in the estate. Such actions require the impleading of all heirs and legatees.

11.     On February 3, 2020, Ms. Amon filed an application for conciliation with the Bernese Oberland Court in Thun, Switzerland, which application resulted in the opening of a proceeding filed under docket CIV 20 2324.  In this action, Ms. Amon seeks primarily to receive her share resulting of the distribution of the matrimonial assets as well as to invalidate the disinheritance clause in the will and hence receive her compulsory portion as an heir, i.e., the minimal amount Ms. Amon is legally entitled to as the wife of the Decedent.  Ms. Amon named heir Albert Amon, and legatees Silvio Venturi, Virginie Mouzat and Christopher Guiraud as defendants.

12.     As Swiss law provides for a time limit for the filing of an action of reduction, on February 4, 2020, Ms. Amon filed a similar action in conciliation in the Cantonal Large Claims Chamber, Lausanne under docket CC 20.006610 against the same parties. Ms. Amon however asserted that this Court does not have jurisdiction as it would imply that the Decedent had his last domicile in Monaco, which Ms. Amon has always disputed. This proceeding has been suspended by the Court.

13.     Finally, because the Decedent had an apartment in Monaco, on February 28, 2020, Ms. Amon brought a similar action covering the same subject in Monaco under docket 2020/00415. Ms. Amon has asserted that this Court does not have jurisdiction on this case for the reasons named above.

14.     Before the filing of Ms. Amon's actions, on August 19, 2019, de facto executor Venturi submitted Decedent's will to the Justice of the Peace in Lausanne, the authority responsible in particular for administrative measures relating to the estate as well as the surveillance of the executor.   All measures relating to the Decedent's estate are filed under

docket ST19.037350.  On October 16, 2019 this Lausanne authority declared itself competent to proceed.

15.     The proceedings in Monaco, Bern and Lausanne shall collectively be referred to for convenience as the "Foreign Proceedings."

16.     An issue common to all of the Foreign Proceedings is the last domicile of the Decedent.  Ms. Amon asserts that his domicile was in Gstaad, Canton of Bern, Switzerland. The other parties have asserted that his last domicile was in the Principality of Monaco.

17.     Multiple appeals were filed in the Foreign Proceedings on jurisdictional grounds.

18.     On February 2, 2022, the Swiss Federal Supreme Court annulled the decisions rendered by the Justice of Peace in Lausanne and the Vaud appeal court accepting the jurisdiction of the Justice of Peace, and remanded for further investigation of the issue of Decedent's domicile.  This decision is attached to the Ex Parte Application as Exhibit 1.

19.     Up to this date, there is no Court nor authority, whose jurisdiction has been recognized for the above-mentioned proceedings.

20.     According to the Swiss Federal Act on Private International Law (PILA), the Swiss courts or administrative authorities at the last domicile of the deceased have jurisdiction to take the measures necessary to settle the estate and to hear disputes relating thereto. Exclusive jurisdiction claimed by a state where real property is located takes precedence.

21.     The authorities at the place of origin always have jurisdiction when a Swiss citizen having their last domicile abroad submits, in a will or a contract of succession, their entire estate or the portion thereof located in Switzerland to Swiss jurisdiction or Swiss law, except as to real property.

22.     The heir and legatees claim that the Decedent was last domiciled in Monaco. As the Decedent submitted his estate to Swiss law and his place of origin is Lausanne, Swiss

courts, place of jurisdiction Lausanne, would have jurisdiction on the estate in case the last domicile was in Monaco, which continues to be contested between the parties.

23.     According to Ms. Amon, the Decedent has never been effectively domiciled in Monaco, but was domiciled in Gstaad, Canton of Bern, Switzerland, the Courts and authorities of this Canton having jurisdiction on the estate.

24.     The Decedent's domicile is at the heart of the proceedings in Monaco and in Switzerland, as recognized by the Swiss Federal Court. The Court reasoned: in again annulling the Lausanne court's exercise of jurisdiction: "as the judgment appears to be quite incomplete with regard to the relationship that the deceased had with Gstaad [Switzerland], an aspect that the evidentiary requirements that were set aside [by the Lausanne court] were specifically intended to clarify." Ex. 1. The Swiss Federal Court also declared that:

> In the state of the findings of the judgment under review, it cannot be said that the ties that the deceased had with Monaco outweighed his ties with Gstaad in terms of intensity given that it has not been shown that the deceased severed all ties with Switzerland from the time of his alleged installation in the Principality in 2011. In any case, it should be remembered that he was an international businessman with an imposing fortune, in particular real estate; the presence of personnel subject to Monaco law and vehicles - the yacht could hardly be moored in Gstaad - is therefore not at all unusual…"

25.     Based on its findings, the Federal and Cantonal Court remanded the matter to the Lausanne Justice of the Peace for further discovery and investigation of the Decedent's last domicile.

26.     The domicile issue will determine which court will have jurisdiction for the action of reduction and the liquidation of the marital property regime.

27.     Besides, the (competent) Swiss court will have to investigate which was the last common domicile of the spouses. Indeed, according to Art. 51 (a) PILA, the Swiss authorities and courts that have jurisdiction to settle the estate have jurisdiction with respect to the liquidation of the marital property regime on the death of one of the spouses. The liquidation of the marital property regime is made prior to the partition of the estate and the calculation of

each heir's share. Pursuant to Swiss private international law, the law applicable to the matrimonial property regime and the distribution of the marital assets may not be the same as the law applicable to the settlement of the estate. In absence of a choice of law, as it is the case for Ms. Amon and the Decedent, marital property relations are governed: by the law of the state in which both spouses are domiciled at the same time, or, if that is not the case; by the law of the state in which both spouses were last domiciled at the same time. If the spouses have never been domiciled at the same time in the same state, the law of their common citizenship applies. Spouses who have never been domiciled in the same state and who do not have a common citizenship are subject to the Swiss rules on separation of property (art. 54 PILA).

28.     Ms. Amon's last common domicile with the Decedent, before he filed a petition for divorce, was Gstaad in the Canton of Bern.

29.     With a last common domicile in Switzerland, the ordinary applicable matrimonial regime is the regime of participation in acquired property (Art. 181 of the Swiss Civil Code [SCC]), under which the property acquired during marriage, with some exceptions, are divided equally between the spouses in case of death (Art. 196 et seqq. SCC).

30.     Discovery from United States sources would shed light on the location of the assets of the Decedent, that have to be taken into account for the determination of his last domicile and the distribution of matrimonial assets as well as the calculation of Ms. Amon's share in the estate, and provide for a more just distribution to Ms. Amon.

31.     With respect to the discovery sought in this proceeding, the Swiss court in the Foreign Proceedings would almost certainly be receptive to the discovery requested, as it would shed further light on whether or Decedent's claim of domicile in Monaco was legitimate, if indeed Decedent was instead domiciled in Bern and finally where Decedent's disposed of the assets relevant for the liquidation of marital property and the estate.

38.     There is also no reason to believe that the production of the discovery requested by Ms. Amon here would violate any public policy.  Ms. Amon merely seeks documents that are in the possession of private parties regarding events that have a substantial impact on her rights as wife of the Decedent, under matrimonial and inheritance laws.  Switzerland does not have any law of public policy against such discovery. To the best of my knowledge, there is not any published precedent in which a Swiss court has disregarded or rejected evidence obtained by a party by means of a pre-trial discovery ordered by a U.S. court.

39.     Moreover, under Swiss law, heirs are entitled to information concerning assets that could be potentially part of an estate. Art. 607 (3) SCC provides that co-heirs in possession of estate property or in debt to the deceased must provide precise information regarding such circumstances prior to the division. Pursuant to Art. 610 (2) SCC, heirs must disclose to each other all circumstances concerning their relationship with the deceased insofar as these pertain to the just and equitable division of the estate. We consider that these obligations also apply to legal heirs that have been disinherited so that Ms. Amon's application here is consistent with her rights.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States that the foregoing is true and correct.

Executed on this 4th day of November 2022 in Lausanne, Switzerland.

FANETTE SARDET

7